**IN THE UNITED STATES DISTRICT COURT**
**FOR THE NORTHERN DISTRICT OF ILLINOIS**

| | |
|---|---|
| **IN RE: TRIONFO SOLUTIONS DATA BREACH LITIGATION** | Case No.: 1:24-CV-04547 |

**PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF**
**CLASS ACTION SETTLEMENT AND APPLICATION FOR**
<u>**ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS**</u>

**TABLE OF CONTENTS**

<u>Page</u>

I.    INTRODUCTION ...................................................................................................1

II.    SUMMARY OF THE SETTLEMENT................................................................2

    A.  Settlement Class........................................................................................2

    B.  Settlement Fund ........................................................................................2

    C.  Business Practice Changes.........................................................................3

    D.  Release ......................................................................................................3

    E.  Attorneys' Fees and Costs..........................................................................3

III.    NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OJECTIONS .....................3

    A.  Notice Program ........................................................................................3

    B.  Claim Submission Process..........................................................................5

    C.  Opt-Outs and Objections...........................................................................5

IV.    ARGUMENT ......................................................................................................5

    A.  The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Finally Approved..................................................................................................5

        1.  Wong Factors ...................................................................................7

            a.  The Settlement Amount Is Reasonable In Light of the Strengths and Weaknesses of Plaintiffs' Case.................................................................................7

            b.  Further Litigation Would Be Complex, Costly, and Lengthy ..................................9

            c.  The Amount of Opposition to the Settlement and the Reaction of the Class ..........9

            d.  Experienced and Competent Counsel Endorse the Settlement.............................10

            e.  The Informal Exchange of Discovery Allowed the Parties To Responsibly Resolve the Case ................................................................................................11

        2.  Rule 23(e)(2) Factors ....................................................................12

a. The Class Representatives and Plaintiffs' Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A)) ....................................................12

b. The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B)) ..................12

c. The Settlement Provides Adequate Relief To The Class (Rule 23(e)(2)(C)).........12

d. The Settlement Treats All Class Members Equally (Rule 23(e)(2)(D)) ...............14

B. Certification of the Settlement Class Is Appropriate .............................................14

C. The Notice Plan Comports with Due Process ...................................................15

V. APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS ...............16

A. Class Counsel's Requested Fees Are Reasonable Under the Percentage-of-the- Fund Method of Calculating Attorneys' Fees .............................................................18

1. Risk of Nonpayment ..............................................................................18

2. Quality of Class Counsel's Performance .............................................................19

3. Amount of Work Necessary to Resolve the Litigation ...............................................20

4. Complexity, Length, and Expense of the Litigation ...............................................21

5. Stakes of the Case .........................................................................22

6. Data from Similar Cases and Range of Reasonableness .............................................22

B. The Litigation Costs Are Reasonable ...................................................23

C. The Requested Service Awards Should Be Approved ...................................................23

VI. CONCLUSION...................................................................................24

## TABLE OF AUTHORITIES

**Cases**                                                                                                          **Page(s)**

*Abubaker v. Dominion Dental USA, Inc.*,
   2021 WL 6750844 (E.D. Va. Nov. 19, 2021) .......................................................................... 14

*Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*,
   2011 WL 3290302 (N.D. Ill. July 26, 2011) ........................................................................... 11

*Americana Art China Co. v. Foxfire Printing & Packaging, Inc*.,
   743 F.3d 243 (7th Cir. 2014) ................................................................................................. 16

*Beesley v. Int'l Paper Co.*,
   2014 WL 375432 (S.D. Ill. Jan 31, 2014) ............................................................................... 20

*Browne v. Am. Honda Motor Co*.,
   2010 WL 9499073 (C.D. Cal. Oct. 5, 2010) ........................................................................... 19

*Charvat v. Valente*,
   2019 WL 5576932 (N.D. Ill. Oct. 28, 2019) ....................................................................... 9, 13

*Cotton v. Hinton*,
   559 F.2d 1326 (5th Cir. 1977) ................................................................................................. 9

*Gaskill v. Gordon*,
   160 F.3d 361 (7th Cir. 1998) .................................................................................................. 22

*Hale v. State Farm Mut. Auto. Ins. Co*.,
   2018 WL 6606079 (S.D. Ill. Dec. 16, 2018) .................................................................... 17, 22

*Hall v. Cole*,
   412 U.S. 1 (1973) .................................................................................................................... 20

*Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.*,
   2019 WL 3183651 (D. Md. July 15, 2019) ............................................................................ 14

*In re Activision Sec. Litig*.,
   723 F. Supp. 1373 (N.D. Cal. 1989) ...................................................................................... 18

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018) ........................................................................................... 14

*In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*,
   789 F. Supp. 2d 935 (N.D. Ill. 2011) ................................................................................ 10, 21

*In re AT&T Mobility*,
  270 F.R.D. 330 (N.D. Ill. Aug. 11, 2010) ........................................................... 7

*In re Capital One Tel. Consumer Prot. Act Litig.*,
  80 F. Supp. 3d 781 (N.D. Ill. 2015) ............................................................. 10, 17

*In re Cont'l Ill. Sec. Litig.*,
  962 F.2d 566 (7th Cir. 1992).......................................................................... 19

*In re Dairy Farmers of Am., Inc.*,
  80 F. Supp. 3d 838 (N.D. Ill. 2015) ............................................................. 16, 18

*In re Equifax Inc. Customer Data Security Breach Litig.*,
  2020 WL 256132 (N.D. Ga. March 17, 2020) .................................................. 14

*In re Experian Data Breach Litig.*,
  U.S. Dist. LEXIS 81243 (C.D. Cal. May 10, 2019) ............................................. 7

*In re Forefront Data Breach Litig.*,
  2023 WL 6215366 (E.D. Wis. Mar. 22, 2023)............................................... 17, 24

*In re Kentucky Grilled Chicken Coupon Mkg. & Sales Pracs. Litig.*,
  2011 WL 13257072 (N.D. Ill. Nov. 30, 2011) ............................................... 16,1 8

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022)......................................................................... 14

*In re Mexico Money Transfer Litig.*,
  164 F. Supp. 2d 1002 (N.D. Ill. 2000) ............................................................. 10

*In re Southwest Airlines Voucher Litig.*,
  2013 WL 4510197 (N.D. Ill. Aug. 26, 2013)................................................... 7, 21

*In re Stericycle Sec. Litig.*,
  35 F.4th 555 (7th Cir. 2022)........................................................................... 18

*In re Synthroid Mktg. Litig.*,
  264 F.3d 712 (7th Cir. 2001) .......................................................................... 23

*In re TikTok, Inc., Consumer Priv. Litig.*,
  565 F.Supp.3d 1076 (N.D. Ill. 2021) ............................................................... 12

*In re Tiktok, Inc., Consumer Priv. Litig.*,
  617 F. Supp. 3d 904 (N.D. Ill. 2022) ........................................................... 15, 24

*Isby v. Bayh*,
  75 F.3d 1191 (7th Cir. 1996).......................................................................... 5

*Kaufman v. Am. Express Travel Related Servs. Co., Inc.*,
  877 F.3d 276 (7th Cir. 2017) ................................................................. 6

*Kirchoff v. Flynn*,
  786 F.2d 320 (7th Cir. 1986) ............................................................... 22

*Kolinek v. Walgreen Co.*,
  311 F.R.D. 483 (N.D. Ill. 2015) ........................................................... 13

*Kujat v. Roundy's Supermarkets Inc.*,
  2021 WL 4551198 (N.D. Ill. Aug. 11, 2021) ........................................ 18

*Martin v. Caterpillar Inc.*,
  2010 WL 11614985 (C.D. Ill. Sept. 10, 2010) ..................................... 22

*Meyenburg v. Exxon Mobil Corp.*,
  2006 WL 2191422 (S.D. Ill. July 31, 2006) ........................................ 22

*Retsky Family Ltd. P'ship v. Price Waterhouse LLP*,
  2001 WL 1568856 (N.D. Ill. Dec. 10, 2001) ....................................... 22

*Schulte v. Fifth Third Bank*,
  805 F. Supp. 2d 560 (N.D. Ill. 2011) ................................................ 9, 21

*Silverman v. Motorola Solutions, Inc.*,
  739 F.3d 956 (7th Cir. 2013) ............................................................... 19

*Snyder v. Ocwen Loan Serv., LLC*,
  2018 WL 4659274 (N.D. Ill. Sept. 28, 2018) ........................................ 6

*Snyder v. Ocwen Loan Serv., LLC*,
  2019 WL 2103379 (N.D. Ill. May 14, 2019) .................................... 10, 12

*Spano v. Boeing Co.*,
  2016 WL 3791123 (S.D. Ill. Mar. 31, 2016) ........................................ 20

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ............................................................... 13

*Sutton v. Bernard*,
  504 F.3d 688 (7th Cir. 2007) ............................................................... 17

*Synfuel Techs., Inc. v. DHL Express (USA), Inc.*,
  463 F.3d 646 (7th Cir. 2006) ........................................................... 7, 11

*T.K. Through Leshore v. Bytedance Tech. Co.*,
    2022 WL 888943 (N.D. Ill. Mar. 25, 2022) ................................................................ 6, 14, 17

*Williams v. Gen. Elec. Capital Auto Lease*,
    1995 WL 765266 (N.D. Ill. Dec. 26 1995) ................................................................ 16

*Wong v. Accretive Health, Inc.*,
    773 F.3d 859 (7th Cir. 2014) ................................................................ 6

*Wright v. Nationstar Mortage LLC*,
    2016 WL 4505169 (N.D. Ill. Aug. 29, 2016) ................................................................ 23

**Statutes**

28 U.S.C. § 1715 ................................................................ 3

**Rules**

Federal Rule of Civil Procedure 23 ................................................................ 16

Federal Rule of Civil Procedure 23(a) ................................................................ 14, 15

Federal Rule of Civil Procedure 23(b)(3) ................................................................ 14, 15

Federal Rule of Civil Procedure 23(c)(2) ................................................................ 15

Federal Rule of Civil Procedure 23(e) ................................................................ 6

Federal Rule of Civil Procedure 23(e)(2) ................................................................ 5, 6, 12, 13, 14

Federal Rule of Civil Procedure 23(e)(3) ................................................................ 14

Federal Rule of Civil Procedure 23(f) ................................................................ 14

Federal Rule of Civil Procedure 23(h) ................................................................ 16, 23

**Other Authorities**

Manual for Complex Litigation, Fourth, § 21.71 (2004) ................................................................ 20

Newberg on Class Actions § 11.41 (4th ed. 2002) ................................................................ 5

*The Rise of Contingent Fee Representation in Patent Litigation*,
    64 ALA. L. REV. 335 (2012) ................................................................ 17

Plaintiffs[1] respectfully submit this Unopposed Motion for Final Approval of Class Action Settlement and Application for Attorneys' Fees, Costs, and Service Awards, supported by the Joint Declaration of Class Counsel ("Joint Dec."), attached as **Exhibit B**, and the Declaration of the Settlement Administrator ("Admin. Dec."), attached as **Exhibit C**.

## I.  <u>INTRODUCTION</u>

On January 7, 2025, the Court preliminarily approved the Settlement, which provides for substantial Settlement Class Member Benefits, including: (1) a non-reversionary, all cash $1,001,000 Settlement Fund, from which Settlement Class Members may elect to receive Cash Payments and/or Credit Monitoring; and (2) non-monetary relief consisting of comprehensive cybersecurity improvements. The Settlement Fund will be used to pay Settlement Class Member Benefits, all Settlement Administration Costs, and any Court-awarded attorneys' fees, costs, and service awards to Plaintiffs.

Since Preliminary Approval, the Notice Program has been completed in compliance with the Agreement and the Preliminary Approval Order, and the Claims process is ongoing. *See generally,* Admin. Dec. The Settlement satisfies all the criteria for Final Approval. Currently, there are no objections and no Settlement Class Members have opted out. *Id.* ¶ 12. This overwhelmingly positive response affirms the Court's initial conclusion that the Settlement is fair, reasonable, and adequate.

Therefore, Plaintiffs and Class Counsel respectfully request the Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes; (3) confirming the appointment of Plaintiffs Christina Killian and Alissa

---

[1] All capitalized terms used herein shall have the same meanings as those defined in Section II of the Settlement Agreement, attached as **Exhibit A** ("Agreement").

Neufeld as Class Representatives; (4) confirming the appointments of Jeff Ostrow of Kopelowitz Ostrow P.A., Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC, and Jason Rathod of Migliaccio & Rathod LLP, as Class Counsel; (5) awarding Class Counsel $333,666.66 for attorneys' fees and $13,178.72 for litigation costs; (6) approving payment of the Settlement Administration Costs; (7) approving payment of service awards to Plaintiffs of $2,500 each; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation.

## II.     SUMMARY OF THE SETTLEMENT

### A.     Settlement Class

Plaintiffs seek Final Approval of the following Settlement Class:

> All persons in the United States whose Private Information was compromised as a result of the Data Incident.

Agreement ¶ 67. Excluded from the Settlement Class are (a) all persons who are governing board members of Defendant; (b) governmental entities; and (c) the Court, the Court's immediate family, and Court staff. *Id.*

### B.     Settlement Fund

The Settlement provides for Defendant to create a $1,001,000.00 all-cash Settlement Fund. Agreement ¶ 70. The cash portion of the Settlement Class Member Benefits takes two forms: Cash Payment A – Documented Losses or Cash Payment B – Flat Cash Payment. *Id.* ¶ 77. Cash Payment A allows for up to $5,000 per Settlement Class Member upon presentment of documented losses fairly traceable to the Data Incident. *Id.* ¶ 77(a). Cash Payment B is an alternative flat cash payment in the estimated amount of $100.00. *Id.* ¶ 77(b). In addition to electing a Cash Payment, Settlement Class Members may elect up to three years of three-bureau Credit Monitoring. *Id.* ¶ 77(c). All Cash Payment amounts will be subject to a *pro rata* increase or decrease depending upon the value of

all Valid Claims. *See id*. ¶ 78.

### C. Business Practice Changes

Defendants have provided Class Counsel with assurances and confidential discovery showing that they have undertaken reasonable steps to further secure their systems and environments and help protect against future cybersecurity breaches. *Id.* ¶ 79.

### D. Release

In exchange for the Settlement Class Member Benefits, Plaintiffs and Settlement Class Members agree to release the Released Parties from any claims that result from, arise out of, are based upon, or relate to (a) the Data Incident; (b) the Action; or (c) any of the alleged violations of laws or regulations cited in the Complaint. *Id.* ¶ 114. The detailed Release language is found in Section XIII of the Agreement.

### E. Attorneys' Fees and Costs

Pursuant to the Agreement, Plaintiffs request an attorneys' fee award of 33.33% of the Settlement Fund ($333,666.66) and $13,178.72 for reimbursement of costs. Joint Dec. ¶¶ 22, 31. The Notices advised the Settlement Class of the amount of attorneys' fees Class Counsel intended to request at Final Approval, and currently no Settlement Class Member has objected to the amount requested. Admin. Dec. ¶ 17.

## III. NOTICE PROGRAM, CLAIMS, OPT-OUTS AND OJECTIONS

### A. Notice Program

In full compliance with the Agreement and the Preliminary Approval Order, the Settlement Administrator has and will continue to fulfill its Notice Program obligations. Specifically, the Settlement Administrator sent the CAFA Notices required by 28 U.S.C. § 1715. Admin. Dec. ¶ 4. The Settlement Administrator also distributed the Postcard Notice to all Settlement Class members

for whom a physical mailing address was available. *See id.* ¶¶ 89. Moreover, the Settlement Administrator's Declaration details the process followed to mail Postcard Notices with Claim Forms via first class mail to 91,295 Settlement Class members. *Id.* ¶ 9 & Exs C, D & E. The Postcard Notices clearly and concisely summarized the Settlement and the legal rights of the Settlement Class members and directed Settlement Class members to visit the Settlement Website for additional information. *Id.* Postcard Notices returned as undeliverable were re-mailed to any new address available through USPS information or to better addresses that were found using a third-party address lookup service. *Id.* ¶¶ 10-11. Upon successfully locating proper addresses, Postcard Notices were promptly remailed to 10,011 Settlement Class members. *Id.* As of March 28, 2025, individual Notice efforts have reached approximately 98.46% of the identified Settlement Class members. *Id.* ¶ 12.

On January 17, 2025, the Settlement Administrator established a toll-free telephone number for Settlement Class members to call for Settlement information and/or to request a Long Form Notice and Claim Form. Admin Dec. ¶ 6. As of March 28, 2025, there have been 243 calls to the toll-free telephone number and 89 callers have been connected to live operators. *Id.*

On January 18, 2025, the Settlement Administrator established a dedicated Settlement Website (www.trionfosetlement.com) for Settlement Class members to file Claims, obtain detailed information about the Action, and review important documents, including the Settlement Agreement, Preliminary Approval Order, Long Form Notice, and Claim Form, and when available, this Motion for Final Approval and Application for Attorneys' Fees, Costs, and Service Awards, and Final Approval Order. *Id.* ¶ 7. It also includes relevant dates, answers to frequently asked questions, opt-out and objection instructions, contact information for the Settlement Administrator, and how to obtain other case-related information. *Id.*

### B.    Claim Submission Process

The timing of the Claim submission process was structured to ensure that all Settlement Class members had adequate time to review the Settlement terms, compile documents supporting their Claim, and decide whether to submit a Claim, opt-out of, or object to the Settlement. Settlement Class Members may continue to submit Claim Forms online or by mail prior to the May 6, 2025, Claim Form Deadline. *Id.* ¶ 13. Settlement Class Members have the option of requesting a digital Cash Payment or a traditional paper check on the Claim Form. *Id.*

As of March 28, 2025, the Settlement Administrator has received 2,651 Claim Forms through the mail and 2,266 Claim Forms were filed electronically through the Settlement Website. Admin Dec. ¶ 14. These numbers are preliminary, as Claim Forms are still subject to final audits, including full assessment of each Claim's validity and a review for duplicate submissions. *Id.* Class Counsel will update the Court at the Final Approval Hearing as to the final number of Claims submitted.

### C.    Opt-Outs and Objections

The Objection and Opt-Out Periods end on April 21, 2025. *Id.* ¶ 16. As of March 28, 2025, the Settlement Administrator has received no opt-out requests and no objections to the Settlement. *Id.* ¶ 17.

## IV.    ARGUMENT

### A.    The Proposed Settlement Is Fair, Reasonable, and Adequate and Should Be Finally Approved.

Rule 23(e)(2) provides that a court may approve a proposed class settlement "only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). "Federal courts naturally favor the settlement of class action litigation." *Isby v. Bayh*, 75 F.3d 1191, 1196 (7th Cir. 1996); Newberg on Class Actions § 11.41 (4th ed. 2002) ("Newberg") ("The compromise of complex

litigation is encouraged by the courts and favored by public policy."). "A district court may approve a settlement of a class action if it concludes that it 'is fair, reasonable, and adequate.'" *Kaufman v. Am. Express Travel Related Servs. Co., Inc.*, 877 F.3d 276, 283 (7th Cir. 2017); Fed. R. Civ. P. 23(e)(2). To make this determination, courts in the Seventh Circuit consider six factors: (1) the strength of the case for plaintiffs on the merits, balanced against the extent of settlement offer; (2) the complexity, length, and expense of further litigation; (3) the amount of opposition to the settlement; (4) the reaction of members of the class to the settlement; (5) the opinion of competent counsel; and (6) stage of the proceedings and the amount of discovery completed. *See Wong v. Accretive Health, Inc.*, 773 F.3d 859, 863 (7th Cir. 2014).

Courts must also consider the four factors set forth in the "new version of [Fed R. Civ. P.] 23(e)(2)," in addition to the six *Wong* factors. *Snyder v. Ocwen Loan Serv., LLC*, 2018 WL 4659274, at *3 (N.D. Ill. Sept. 28, 2018). The Rule 23(e) factors are whether: "(A) the class representatives and class counsel have adequately represented the class; (B) the proposal was negotiated at arm's length; (C) the relief provided for the class is adequate, taking into account (i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3); and (D) the proposal treats class members equitably relative to each other." Fed. R. Civ. P. 23(e)(2)(A)-(D). The *Wong* and Rule 23(e)(2) factors may overlap or be "duplicative." *See T.K. Through Leshore v. Bytedance Tech. Co.*, 2022 WL 888943, at *10 (N.D. Ill. Mar. 25, 2022).

6

1. ***Wong* Factors**

  a. ***The Settlement Amount Is Reasonable in Light of the Strengths and Weaknesses of Plaintiffs' Case.***

"The most important factor relevant to the fairness of a class action settlement is . . . the strength of plaintiff's case on the merits balanced against the amount offered in the settlement." *Synfuel Techs., Inc. v. DHL Express (USA), Inc.*, 463 F.3d 646, 653 (7th Cir. 2006) (citations omitted). "Because the essence of settlement is compromise, courts should not reject a settlement solely because it does not provide a complete victory to the plaintiffs." *In re AT&T Mobility*, 270 F.R.D. 330, 347 (N.D. Ill. Aug. 11, 2010) (citations omitted). Here, the $1,001,000.00 non-reversionary all-cash Settlement Fund is an excellent result for the Settlement Class. Although Plaintiffs believe they would likely prevail on their claims, they are also aware that Defendants deny the material allegations of the Complaint and intend to pursue several legal and factual defenses, including but not limited to, whether Defendants were actually liable for the conduct of third-party hackers. *See* Joint Dec. ¶¶ 9-13. An adverse decision would have deprived the Settlement Class, or at least a substantial portion thereof, of any recovery whatsoever. *Id*. ¶ 11. Thus, the unsettled nature of several potentially dispositive threshold issues in this case poses a significant risk to Plaintiffs' claims and would add to the length and costs of continued litigation. *Id*. ¶ 13. The proposed Settlement foregoes these significant risks. *In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) ("In considering the strengths of plaintiff's case, legal uncertainties at the time of settlement favor approval.").

  Indeed, the instant $1,011,000.00 non-reversionary all-cash common Settlement Fund for a class of 91,304 members exceeds many other settlements in cases involving data breaches. An effective way to compare data breach settlements is by dividing the common fund amount by the number of class members. *See, e.g., In re Experian Data Breach Litig.*, No. SACV 15-01592 AG

(DMFx), 2019 U.S. Dist. LEXIS 81243, at *25 (C.D. Cal. May 10, 2019) (noting settlement provided a $1.47 payout per person, "which compares favorably to other approved data breach settlements" and collecting cases showing same). Here this Settlement returned $11.07 per person.[2] Joint Dec. ¶ 15. The chart below lists several approved data breach settlements from around the country demonstrating the instant Settlement compares very favorably to other similar common fund data breach settlements.

| Case Name | Case Number | Amount | Class Size | Per Person |
|---|---|---|---|---|
| *Tucker v. Marietta Area Health Care* | No. 2:22-CV-00184 (S.D. Ohio) | $1,750,000 | 216,478 | $8.08 |
| *Reynolds v. Marymount Manhattan College* | 1:22-cv-06846 (S.D.N.Y.) | $1,300,000 | 191,752 | $6.78 |
| *Thomsen, et al. v. Morley Companies Inc.* | 1:22-CV-10271-TLL-PTM (E.D. Mich.) | $4,300,000 | 694,679 | $6.19 |
| *In re: Blackhawk Network Data Breach Litigation* | 22-cv-07084 (N.D. Cal.) | $985,000 | 165,727 | $5.90 |
| *Winstead v. ComplyRight, Inc.* | No. 1:18-cv-04990 (N.D. Ill.) | $3,025,000 | 665,689 | $4.54 |
| *Nelson v. Bansley & Kiener, L.L.P* | 2021CH06274 (Cir. Ct. Ill.) | $900,000 | 274,115 | $3.28 |
| *Cheryl Gaston, et al. v. FabFitFun Inc.* | 2:20-cv-09534-RGK-E (C.D. Cal.) | $625,000 | 441,160 | $1.41 |

Further, the Settlement will provide real monetary benefits to about 5,000 Settlement Class Members who have already submitted Claims and the additional ones who submit Claims before the deadline, *see* Admin. Dec. ¶ 20, including for each of them: either (1) up to $5,000 upon presentment of documented losses fairly traceable to the Data Incident; or (2) a flat cash payment in the estimated amount of $100.00; and the ability to elect up to three years of three-bureau Credit Monitoring. Agreement ¶¶ 77(a)-(c). Moreover, the real value of the Settlement is significantly

---

[2] To be clear, given claims rates of between 1% and 3% on average for data breach cases, the actual amounts Claimants receive greatly exceeds the per person calculation, providing a useful benchmark when comparing cases.

higher because of the business practice changes Defendants have agreed to. *See id.* ¶ 78.

### b. Further Litigation Would Be Complex, Costly, and Lengthy.

The Settlement also avoids the costs and delay associated with complex class litigation. Any decision on the merits (whether favorable or not) would take years and entail extensive discovery and motion practice, including, in all probability, motions for summary judgment. Joint Dec. ¶¶ 9, 13; *see also Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977) ("[C]lass action suits have a well-deserved reputation as being most complex."). Here, Plaintiffs still would have to navigate this case through a motion to dismiss, class certification (and the extensive expert discovery associated therewith), dispositive motions, merits expert discovery, pretrial motions, and trial. Joint Dec. ¶ 9. But the case would not end there. Regardless of who prevails on the merits, the winning party will likely face an appeal on any judgment. *Id.* ¶ 13. At a minimum, this process would likely take over five years to complete. The "[s]ettlement allows the case to avoid the inherent risk, complexity, time, and cost associated with continued litigation." *Schulte v. Fifth Third Bank*, 805 F. Supp. 2d 560, 598 (N.D. Ill. 2011). Rather than embarking on years of protracted and uncertain litigation, Plaintiffs and their counsel took advantage of the opportunity to negotiate a Settlement that provides immediate, certain, and complete relief to all Settlement Class Members. *See Schulte*, 805 F. Supp. 2d at 586. The immediacy and certainty of a recovery, when balanced against the significant costs, risks, and delay of proceeding with this litigation, weigh in favor of settlement. *Charvat v. Valente*, 2019 WL 5576932, at *7 (N.D. Ill. Oct. 28, 2019).

### c. The Amount of Opposition to the Settlement and the Reaction of the Class

The reaction of the Settlement Class has been overwhelmingly positive. In accordance with the Notice Program, the Settlement Administrator successfully provided direct notice to 98.46%

of the Settlement Class by mail. *See* Admin. Dec. ¶ 12. This reach rate is consistent with, if not higher than, other court-approved, best practicable notice programs and the Federal Judicial Center Guidelines. *Id.* As of March 28, 2025, a significant number of claims have been submitted compared to zero opt-outs or objections. *Id.* ¶¶ 14, 17. The total lack of opposition thus far reflects the Settlement Class' support for the Settlement. *See, e.g.*, *In re Cap. One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 792 (N.D. Ill. 2015) (finding an opt-out and objection rate of 0.0032% low enough to support settlement); *In re Sw. Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (finding an opt-out and objection rate of less than 0.01% supportive of the reasonableness of settlement); *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d 935, 965 (N.D. Ill. 2011) (same).

### d. *Experienced and Competent Counsel Endorse the Settlement*

As is evident from Class Counsel's declarations and firm resumes, Plaintiffs' Counsel is highly experienced in data breach class actions around the country. Joint Dec. ¶¶ 2 & Exs. 1-3. Therefore, Class Counsel's endorsement of this Settlement supports approval. *Cf. Snyder v. Ocwen Loan Serv., LLC*, 2019 WL 2103379, at *6 (N.D. Ill. May 14, 2019) ("Class counsel are experienced members of the plaintiff's consumer class action bar. They favor the settlement, and this is a factor supporting approval of the amended settlement."); *see also In re Mexico Money Transfer Litig.*, 164 F. Supp. 2d 1002, 1020 (N.D. Ill. 2000) (placing "significant weight on the … strong endorsement of [this] settlement" by "well-respected" attorneys). In addition, the competence of Class Counsel's work should be judged by their results in this case. Here, Class Counsel investigated the case, brought multiple individual lawsuits, organized themselves to successfully litigate this Action, and vigorously pursued the Action. Joint Dec. ¶ 3. It was through these efforts that Class Counsel was able to secure the result now before the Court. Thus, Plaintiffs'

Counsel's endorsement of this Settlement supports final approval.

In addition, Class Counsel believe the Settlement is in the best interest of the Settlement Class because Settlement Class Members will receive their benefits in the near future instead of having to wait for lengthy litigation and any subsequent appeals to run their course. *Id.* ¶ 8. Further, due to the defenses Defendants have indicated they would raise should the case proceed through litigation—and the resources Defendants have committed to defend and litigate this matter—it is possible that Settlement Class members would receive no benefit whatsoever in the absence of this Settlement. *Id* ¶ 8. Given Class Counsel's extensive experience litigating similar class action cases in federal and state courts across the country, this factor also weighs in favor of granting preliminary approval.

> ### e. The Informal Exchange of Discovery Allowed the Parties to Responsibly Resolve the Case.

This last factor examines the amount of discovery completed at the time of settlement. *Synfuel*, 463 F.3d at 653. Notably, this factor "indicates how fully the district court and counsel are able to evaluate the merits of plaintiffs' claims." *Am. Int'l Grp., Inc. v. ACE INA Holdings, Inc.*, 2011 WL 3290302 at *8 (N.D. Ill. July 26, 2011) (cleaned up). Here, Class Counsel consulted with liability and damage experts, the Parties informally exchanged information regarding the facts and size of the Settlement Class pursuant to Federal Rule of Evidence 408, and Class Counsel thoroughly investigated the facts and law relating to Plaintiffs' allegations and Defendants' defenses. Joint Dec. ¶ 5. Accordingly, "[t]hough a lot of work remains to be done if the case is not settled, much has been done already," and Plaintiffs and their counsel had "sufficient information via discovery and otherwise to enable them to evaluate the merits of the case." *Synder*, 2019 WL 2103379, at *6. As such, this factor also weighs in favor of final approval.

2.      **Rule 23(e)(2) Factors**

a.      ***The Class Representatives and Plaintiffs' Counsel Have Adequately Represented The Class (Rule 23(e)(2)(A))***

Here, the Plaintiffs' participation in the case was invaluable. For example, Plaintiffs assisted Class Counsel in investigating their claims including providing supporting documentation to aid in Class Counsel's investigation and the subsequent complaint-drafting. Joint Dec. ¶ 21. *Cf. Snyder*, 2019 WL 2103379, at *4. Because the Court has already found that Class Counsel meets the obligations and responsibilities of class counsel, this factor is satisfied. *See* ECF No. 31 (appointing Class Counsel).

b.      ***The Settlement Was Negotiated at Arm's Length (Rule 23(e)(2)(B))***

Class Counsel and counsel for Defendants are experienced in class action litigation and engaged in arms-length negotiations with the assistance of a neutral third-party mediator. Joint Dec. ¶¶ 4, 7. Accordingly, this factor is met. *Snyder*, 2019 WL 2103379, at *4 (factor met where "[t]he parties conducted their negotiations via three separate and independent mediators"); *In re TikTok, Inc., Consumer Priv. Litig.*, 565 F.Supp.3d 1076, 1088 (N.D. Ill. 2021) (factor met where parties settled case with the assistance of a mediator.).

c.      ***The Settlement Provides Adequate Relief To The Class (Rule 23(e)(2)(C))***

In determining whether relief is adequate, a court considers "(i) the costs, risks, and delay of trial and appeal; (ii) the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims, if required; (iii) the terms of any proposed award of attorney's fees, including timing of payment; and (iv) any agreement required to be identified under Rule 23(e)(3)." Fed. R. Civ. P. 23(e)(2)(C)(i–iv).

***"The costs, risks, and delay of trial and appeal."*** As noted above, the Settlement meets

12

this factor. Even if Plaintiffs could obtain and maintain class certification, their ability to prove the merits of the case presents a further obstacle. Moreover, litigating a complex case through trial is inherently perilous regardless of the strength of the claims, which does not even take into account the risks and delay associated with any appeal that would surely come if a favorable judgement was obtained. The Settlement eliminates these and other risks of continued litigation, including the very real threat of no recovery after several years of protracted litigation.

*"The effectiveness of any proposed method of distributing relief to the class."* Settlement Class Members needed only to submit a simple Claim Form (online or by mail). Agreement ¶ 96. That this is a reasonable method of distributing relief was borne out by the 98.46% reach rate of the Settlement Class by mail, which is consistent with other court-approved, best-practicable notice programs and Federal Judicial Center Guidelines. *See* Admin. Dec. ¶ 12.. *See, e.g., Kolinek v. Walgreen Co.*, 311 F.R.D. 483, 499 (N.D. Ill. 2015) (holding it was "neither unfair nor unreasonable" to ask claimants to submit a "short and direct" claim form that required claimants to provide their names, address, and signature, and to check a box if they wished to make a claim).

*"The terms of any proposed award of attorney's fees, including timing of payment."* In discharging its duty to determine the fairness of attorneys' fees awarded in a class action settlement, the Court's primary concern is to ensure that the process of negotiation leading to the fee has "adequately protected the class from the possibility that class counsel were accepting an excessive fee at the expense of the class." *Staton v. Boeing Co.*, 327 F.3d 938, 966 (9th Cir. 2003); s*ee also* Fed. R. Civ. P. 23(e)(2)(C)(iii). Here, the proposed attorneys' fees and costs are 33.33% of the Settlement Fund, which is reasonable in this Circuit and matches the market rate for the legal services provided. *Kolinek*, 311 F.R.D. at 503 (granting "Kolinek's motion for attorney's fees in the amount of … 36% of the settlement fund"); *Charvat*, 2019 WL 5576932, at *12 ("[T]he

Court finds that a 33.99% attorneys' fee award reflects the market rate and takes into account the risk of nonpayment."). There is also nothing to suggest that the attorneys' fees are being favored under the Settlement, and The Settlement is not conditioned on any payment of fees. Agreement ¶ 112. Additionally, all Settlement Class Members had an opportunity to review the fee request, and no objections have been lodged. *See* Admin Dec. ¶ 17.

*"Any agreement required to be identified by Rule 23(e)(3)."* There are no agreements between the Parties other than the Settlement Agreement.

> d.     **The Settlement Treats All Class Members Equally (Rule 23(e)(2)(D))**

Nothing in the Settlement improperly discriminates between any segments of the Settlement Class. Fed. R. Civ. P. 23(e)(2)(C). Specifically, each Settlement Class member is eligible for the same relief, and for the same *pro rata* adjustment. Agreement ¶¶ 77(a)-(c), 77; *T.K. Through Leshore*, 2022 WL 888943, at *16 ("The Proposed Settlement provides for *pro rata* shares to each member of the Proposed Settlement Class. Such distribution plans indicate equitable treatment of class members relative to each other."). Therefore, this factor is met.

> B.     **Certification of the Settlement Class Is Appropriate.**

As part of Plaintiffs' Motion for Final Approval, Plaintiffs respectfully ask the Court to grant class certification of the Settlement Class under Rule 23(a) and (b)(3). Settlement classes are routinely certified in consumer data breach cases.[3] There is nothing unique about this case that

---

[3] *See, e.g.*, *Abubaker v. Dominion Dental USA, Inc.,* 2021 WL 6750844 (E.D. Va. Nov. 19, 2021); *Hutton v. Nat'l Bd. of Examiners in Optometry, Inc.,* No. l:16- cv-03025, 2019 WL 3183651 (D. Md. July 15, 2019); *In re Equifax Inc. Customer Data Security Breach Litig.,* 2020 WL 256132 (N.D. Ga. March 17, 2020), *aff'd in relevant part* 999 F.3d 1247 (11th Cir. 2021), *cert. denied sub nom. Huang v. Spector,* 142 S. Ct. 431 (2021), and *cert. denied sub nom. Watkins v. Spector,* 142 S. Ct. 765 (2022); *In re Anthem, Inc. Data Breach Litig.,* 327 F.R.D. 299 (N.D. Cal. 2018); *In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.,* 341 F.R.D. 128 (D. Md. 2022) (certifying certain statewide classes; Rule 23(f) appeal granted).

would counsel otherwise. This Court already found that it would likely certify the Settlement Class when it preliminarily approved the Settlement. *See e.g.*, Preliminary Approval Order [ECF No. 31]. Nothing has changed since that time. Joint Dec. ¶ 20. The Settlement Class still meets the requirements of numerosity, commonality, typicality, and adequacy, and, because common issues predominate and a class action is the appropriate method of litigating the controversy, the Court should finally certify the Settlement Class for settlement purposes. Where nothing has changed relative to the Rule 23(a) and (b)(3) factors since Preliminary Approval, that decision should be made final, for the reasons set forth in the Plaintiffs' Motion for Preliminary Approval. [ECF No. __ at ___.]

### C. The Notice Plan Comports with Due Process.

The Court previously approved the Notice Program proposed in this case and found it satisfied all requirements of due process and Rule 23(c)(2). Preliminary Approval Order [ECF No. 31] ¶ 11. Here, as set forth above, the Settlement Administrator issued notice in the best practicable manner by directly notifying a substantial portion of the Settlement Class via direct mail notice. The reach rate of the Notice Program was estimated to be 98.46% by Kroll, a rate that far exceeds the 70% threshold deemed adequate to satisfy state and federal due process considerations. *See* Admin. Dec. ¶ 12; *see, e.g.*, Federal Judicial Center, Judges' Class Action Notice and Claims Process Checklist and Plain Language Guide 1 (2010) (recognizing the effectiveness of notice that reaches between 70 and 95 percent of the class); *In re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d 904, 928 (N.D. Ill. 2022) (granting final approval and finding notice that "clear[ed] the Federal Judicial Center's seventy-percent threshold" adequate). Such notice complies with the program approved by the Court in its Preliminary Approval Order, is consistent with notice programs approved in this District, courts in the Seventh Circuit, and across the United States, is

15

considered a "high percentage," and is within the "norm." *See* Barbara J. Rothstein & Thomas E. Willging, Managing Class Action Litigation: A Pocket Guide for Judges, 27 (3d ed. 2010).

Because the Notice Program set forth in the Agreement satisfies the requirements of due process and Rule 23 of the Federal Rules of Civil Procedure, and provides the best notice practicable under the circumstances, the Settlement is due to be finally approved.

## V.     APPLICATION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

Pursuant to the Settlement and the Notices, and consistent with recognized class action practice and procedure, Class Counsel respectfully request an award of attorneys' fees of $333,666.66, which is equal to 33.33% of the $1,001,000 Settlement Fund, and $13,178.72 to reimburse them for related costs. Joint Dec. ¶ 21. Such a request is within the range of attorneys' fees approved in other class actions and is fair and reasonable in light of the work performed by Class Counsel and the outstanding recovery secured on behalf of the Settlement Class.

Under Federal Rule of Civil Procedure 23(h), courts may award "reasonable attorney's fees and nontaxable costs that are authorized by law or the parties' agreement." Fed. R. Civ. P. 23(h). Courts in the Seventh Circuit apply one of two fee calculation methods: the "percentage of the fund" method or the "lodestar" method. *See Americana Art China Co. v. Foxfire Printing & Packaging, Inc*., 743 F.3d 243, 247 (7th Cir. 2014). The Court has discretion in choosing which method to employ. *Id.* However, "'[t]he approach favored in the Seventh Circuit is to compute attorney's fees as a percentage of the benefit conferred upon the class.'" *In re Kentucky Grilled Chicken Coupon Mktg. & Sales Pracs. Litig*., 2011 WL 13257072, at *3 (N.D. Ill. Nov. 30, 2011) (citing *Williams v. Gen. Elec. Capital Auto Lease*, 1995 WL 765266, at *9 (N.D. Ill. Dec. 26 1995); *see also In re Dairy Farmers of Am., Inc*., 80 F. Supp. 3d 838, 844 (N.D. Ill. 2015) (noting that the percentage method "has emerged as the favored method for calculating fees in common fund cases

in this district"). Indeed, "the 'percentage method is employed by the vast majority of courts in the Seventh Circuit.'" *T.K. Through Leshore v. Bytedance Tech. Co*., 2022 WL 888943, at *24 (N.D. Ill. Mar. 25, 2022) (*quoting Hale v. State Farm Mut. Auto. Ins. Co*., 2018 WL 6606079, at *7 (S.D. Ill. Dec. 16, 2018)).

Applying a percentage-of-the-fund approach is also generally more appropriate in cases like this one because it best reflects the fair market price for the legal services provided by Class Counsel. *See Sutton v. Bernard*, 504 F.3d 688, 693 (7th Cir. 2007) (directing district court on remand to consult the market for legal services so as to arrive at a reasonable percentage of the common fund recovered). The percentage-of-the-fund approach also accurately reflects the contingent nature of the fees negotiated between Class Counsel and Plaintiffs. *See In re Capital One Tel. Consumer Prot. Act Litig.*, 80 F. Supp. 3d 781, 795 (N.D. Ill. 2015) (applying the percentage-of-the-fund approach and noting that class members would typically negotiate fee arrangement based on percentage method rather than lodestar). By contrast, a lodestar approach may encourage significant inefficiencies and further litigation as the parties and the court have to review the extensive billing records produced and determine the reasonableness of the time spent on any particular task and whether it actually furthered the litigation.[4]

Accordingly, the Court should adopt and apply the percentage-of-the-fund approach. Class

---

[4] The lodestar method reintroduces the same problems that the Seventh Circuit avoided by giving courts the ability to choose percentage-of-the-fund. The Class would not have put a lodestar crosscheck into their agreements if they had gone into the market to find an attorney for their many individual claims—they would have, as Class Counsel request here, agreed to a flat contingency fee in a case like this. *See* David L. Schwartz, *The Rise of Contingent Fee Representation in Patent Litigation*, 64 ALA. L. REV. 335, 360 (2012) (in study of sophisticated entity's retention of counsel on contingent basis in patent dispute litigation, no evidence of lodestar crosscheck); *In re Forefront Data Breach Litig.*, 2023 WL 6215366, at *8 (E.D. Wis. Mar. 22, 2023) ("The market rate for plaintiff's counsel in a damages case is generally a contingent fee . . . and any lodestar calculation would be artificial. Identifying a reasonable hourly rate for attorneys who normally work on contingency would be particularly difficult.") (internal citation omitted).

Counsel's requested attorneys' fees are reasonable in light of the work performed and the recovery secured for the Settlement Class.

**A.** **Class Counsel's Requested Fees Are Reasonable Under the Percentage-of-the-Fund Method of Calculating Attorneys' Fees.**

Under the percentage-of-recovery method, the attorneys' fees equal some percentage of the common settlement fund. *See In re Kentucky Grilled Chicken Coupon Mkg. & Sales Pracs. Litig.*, 2011 WL 13257072, at *3. This percentage approach aligns the incentives of the class members and their counsel and thus encourages counsel to spend their time efficiently and to focus on maximizing the size of the class's recovery. *In re Activision Sec. Litig.*, 723 F. Supp. 1373, 1375-76 (N.D. Cal. 1989). Here, Plaintiffs' requested fee is reasonable under a percentage-of-recovery analysis, especially given that it is a common fund with no reversion.

The Seventh Circuit has stated that in assessing the reasonableness of a requested percentage to award as attorneys' fees, a "court should do its best to award counsel the market price for legal services." *In re Stericycle Sec. Litig.*, 35 F.4th 555, 559 (7th Cir. 2022) (cleaned up). In determining the market rate for legal work, district courts review factors including: (i) "the risk of nonpayment a firm agrees to bear;" (ii) "the quality of [Counsel's] performance;" (iii) "the amount of work necessary to resolve the litigation;" (iv) "the stakes of the case;" (v) the "complexity, length, and expense of the litigation;" and (vi) "actual fee agreements, data from similar cases, and class-counsel auctions." *Id*. at 560; *In re Dairy Farmers of Am., Inc*., 80 F. Supp. 3d at 844. A review of these factors supports Class Counsel's fee request.

**1.** **Risk of Nonpayment**

This factor recognizes the risk of nonpayment in cases prosecuted on a contingency basis where claims are not successful, which can justify higher fees. *See, e.g., Kujat v. Roundy's Supermarkets Inc*., 2021 WL 4551198, at *4 (N.D. Ill. Aug. 11, 2021) ("A one third fee is also

reasonable in light of the significant risks of nonpayment that Plaintiffs' counsel faced."). Put simply: "A lawyer who both bears the risk of not being paid and provides legal services is not receiving the fair market value of his work if he is paid only for the second of these functions. If he is paid no more, competent counsel will be reluctant to accept fee award cases." *Browne v. Am. Honda Motor Co*., 2010 WL 9499073, at *11 (C.D. Cal. Oct. 5, 2010); *Silverman v. Motorola Solutions, Inc*., 739 F.3d 956, 958 (7th Cir. 2013) ("Contingent fees compensate lawyers for the risk of non-payment. The greater risk of walking away empty-handed, the higher the award must be to attract competent and energetic counsel.").

Here, Class Counsel took on this complex class action on a contingent basis. Joint Dec. ¶ 24. And, while confident in Plaintiffs' claims, there is still much litigation left until trial. Class Counsel would have to guide this case through a motion to dismiss, discovery, class certification, summary judgment and trial, which each have their own difficulties. *See id.* ¶¶ 9-13. Further, even if Plaintiffs succeeded at class certification and trial, Defendants would be entitled to their appeals. Thus, this case presented a substantial risk of nonpayment for Class Counsel. *See In re Cont'l Ill. Sec. Litig*., 962 F.2d 566, 570 (7th Cir. 1992) (remanding for reconsideration of "the fee due class counsel" where "they could have lost everything").

The fact Class Counsel undertook this representation, despite these significant risks, supports the requested fee award.

### 2. Quality of Class Counsel's Performance

Class action litigation presents challenges, especially in this case, as outlined above. Nonetheless, Class Counsel achieved an excellent Settlement that provides significant monetary relief, and proved they have the ability and resources to litigate this case zealously and effectively. Indeed, it was after lengthy negotiation that Class Counsel was able to achieve a result that secured

Settlement Class Members at least what they likely could have received at trial. Joint Dec. ¶ 7. Class Counsel litigated this case efficiently, effectively, and civilly. The result is a function of the high quality of that work, which supports the requested fee award.

In addition to the monetary compensation Class Counsel have obtained for the Settlement Class, the Settlement also provides for valuable prospective relief. Under the terms of the Agreement, Defendants confirmed that they have undertaken or will undertake reasonable steps to further secure its security systems and environments. Agreement ¶ 79. These business practice changes will result in Plaintiffs' and Settlement Class members' Private Information being better protected from future breaches—a significant benefit vis-à-vis their privacy rights. As a result, this non-monetary relief obtained by Class Counsel further justifies the reasonableness of the attorneys' fees being sought. *See Spano v. Boeing Co.*, 2016 WL 3791123, at *1 (S.D. Ill. Mar. 31, 2016) ("A court must also consider the overall benefit to the Class, including non-monetary benefits, when evaluating the fee request. . . . This is important so as to encourage attorneys to obtain meaningful affirmative relief.") (citing *Beesley v. Int'l Paper Co.*, 2014 WL 375432, at *1 (S.D. Ill. Jan 31, 2014)); Manual for Complex Litigation, Fourth, § 21.71, at 337 (2004)); *see also Hall v. Cole*, 412 U.S. 1, 5 n.7 (1973) (awarding attorneys' fees when relief is obtained for the class "must logically extend, not only to litigation that confers a monetary benefit on others, but also litigation which corrects or prevents an abuse which would be prejudicial to the rights and interests of those others.") (internal quotations omitted).

### 3. Amount of Work Necessary to Resolve the Litigation

Class Counsel were aware that pursuing this Action beyond settlement would be lengthy and expensive—it would require additional discovery, briefing, argument, trial, and potential appeals, which would delay relief for several years. Joint Dec. ¶¶ 9-13. In light of relatively few

privacy cases that have been taken to trial, absent the Settlement, the Parties were likely to litigate a number of issues that are either still being resolved by the courts or are matters of first impression. *See, e.g., In re Southwest Airlines Voucher Litig.*, 2013 WL 4510197, at *7 (N.D. Ill. Aug. 26, 2013) (noting that "legal uncertainties at the time of settlement favor final approval").

### 4. Complexity, Length, and Expense of the Litigation

The complex nature of this Action further favors the requested fee award. Data breach class action lawsuits are complex, risky, and expensive to litigate, especially when considering the numerous unresolved issues that they present. For example, if this case continued, the Parties also would have likely litigated the issue of class certification. Although Plaintiffs believe a data breach case like this one is amenable to class certification given Defendants' uniform conduct and the issues common in Plaintiffs' claims, that process is by no means risk-free. If the Court did certify a class, Defendants could seek leave to appeal, leading to the use of more Party resources, and if the petition is granted, leading to additional delay. Even if Plaintiffs were to succeed on a motion to dismiss, at class certification, summary judgment, and trial, protracted litigation would consume significant resources, including the time and costs associated with further written and oral discovery, securing expert testimony on complex cybersecurity and data storage issues, and again, motion practice, trial, and any appeals. It is possible that "this drawn-out, complex, and costly litigation process . . . would provide [Settlement] Class Members with either no in-court recovery or some recovery many years from now[.]" *In re AT&T Mobility Wireless Data Servs. Sales Tax Litig.*, 789 F. Supp. 2d at 964. Because the proposed Settlement offers immediate—and substantial—monetary relief to the Settlement Class and a prompt end to Defendants' alleged misconduct while avoiding the need for extensive and drawn-out litigation, approval of the Settlement is appropriate. *See, e.g., Schulte v. Fifth Third Bank*, 805 F. Supp. 2d at 586 ("Settlement

allows the class to avoid the inherent risk, complexity, time, and cost associated with continued litigation."). Thus, this factor also favors Plaintiffs' requested fees and expenses.

### 5. Stakes of the Case

This factor supports approving Class Counsel's fee request. Despite the uncertain nature of the Action, Settlement Class Members are receiving real and immediate benefits under the Settlement. Joint Dec. ¶ 8. Moreover, the risk of delay is a factor here, as the Data Incident put Plaintiffs at risk of identity theft. *Id.* ¶ 13. The benefits of the Settlement ensure protection against identity theft that may otherwise fall upon the Settlement Class if litigation were to continue.

### 6. Data from Similar Cases and Range of Reasonableness

The Seventh Circuit has held that "[w]hen a class suit produces a fund for the class, it is commonplace to award the lawyers for the class a percentage of the fund … in recognition of the fact that most suits for damages in this country are handled on the plaintiff's side on a contingent fee basis. The typical contingent fee is between 33 and 40 percent." *Gaskill v. Gordon*, 160 F.3d 361, 362 (7th Cir. 1998) (emphasis added; internal citations omitted); *see, e.g.*, *Starts v. Little Caesar Enters., Inc.*, No. 1:19-cv-01575 (N.D. Ill.) (Rowland, J.), ECF No. 120 (approving attorneys' fee award of one-third of non-reversionary settlement fund). Indeed, district courts within the Seventh Circuit "regularly award percentages of 33.33% or higher to counsel in class action litigation." *Hale*, 2018 WL 6606079, at *10; *Martin v. Caterpillar Inc.*, 2010 WL 11614985, at *2 (C.D. Ill. Sept. 10, 2010) ("[C]ourts in the Seventh Circuit award attorney fees equal to approximately one-third or more of the recovery.") (cleaned up); *Retsky Family Ltd. P'ship v. Price Waterhouse LLP*, 2001 WL 1568856, at *4 (N.D. Ill. Dec. 10, 2001) (noting that "[a] customary contingency fee would range from 33 1/3% to 40% of the amount recovered") (citing *Kirchoff v. Flynn*, 786 F.2d 320, 324 (7th Cir. 1986)); *Meyenburg v. Exxon Mobil Corp.*, 2006 WL 2191422,

at *2 (S.D. Ill. July 31, 2006) ("33 1/3% to 40% (plus the cost of litigation) is the standard contingent fee percentages in this legal marketplace for comparable commercial litigation"). In the instant case, Class Counsel request an award of $333,666.66, in attorneys' fees, which is equal to 33.33% of the Settlement Fund, well within the range of reasonableness.

* * *

Therefore, all the factors support Class Counsel's request for a fee that is 33.33% of the Settlement Fund.

### B. The Litigation Costs Are Reasonable.

This Court may also award reasonable expenses as provided for by the Agreement. Fed. R. Civ. P. 23(h). Class Counsel request reimbursement of $13,178.72 for litigation costs that Class Counsel incurred and paid in connection with the prosecution of the Action and the Settlement. The costs include fees related to filing the complaints, service of process, mediation, and experts. Joint Dec. ¶ 32. Ordinary law firm overhead costs, including postage and legal research, are not included. *Id*. Class Counsel are entitled to reimbursement of reasonable and necessary out-of-pocket expenses incurred in the course of activities that benefitted the class. *See In re Synthroid Mktg. Litig*., 264 F.3d 712, 722 (7th Cir. 2001). Accordingly, such costs should be reimbursed to Class Counsel.

### C. The Requested Service Awards Should Be Approved.

Service awards fulfill the important purpose of compensating plaintiffs for "the amount of time and effort the plaintiff[s] expended in pursuing the litigation." *Wright v. Nationstar Mortage LLC*, 2016 WL 4505169, at *17 (N.D. Ill. Aug. 29, 2016). Here, Plaintiffs spent time protecting the interests of the Settlement Class through their involvement in the Action. Joint Dec. ¶¶ 21-22 Plaintiffs assisted Class Counsel in investigating their claims by providing information necessary

23

to draft and file the Complaints expeditiously. *Id.* During the course of litigation, Plaintiffs kept in regular contact with Class Counsel to receive updates on the progress of the case and to discuss strategy and settlement. *Id.* They reviewed and approved the terms of the Settlement and other important case documents. *Id.* The $2,500 proposed Service Awards to the Class Representatives are appropriate in light of Plaintiffs' efforts to protect the interests of the other Settlement Class, the time and effort they expended pursuing this matter, and the substantial benefit they helped achieve for the Settlement Class. *Cf. In re Tiktok, Inc., Consumer Priv. Litig.*, 617 F. Supp. 3d at 949 (approving $2,500 service awards for each of the named Plaintiffs); *In re Forefront Data Breach Litig.*, 2023 WL 6125366, at *9 (same).

## VI.   <u>CONCLUSION</u>

Plaintiffs and Class Counsel respectfully request the Court enter an Order: (1) granting Final Approval to the Settlement; (2) affirming certification of the Settlement Class for settlement purposes; (3) confirming the appointment of Plaintiffs as Class Representatives; (4) confirming the appointments of Jeff Ostrow, Gary M. Klinger, and Jason Rathod as Class Counsel; (5) awarding Class Counsel $333,666.66 for attorneys' fees and $13,178.72 for costs; (6) approving payment of the Settlement Administration Costs; (7) awarding Service Awards to Plaintiffs in the amount of $2,500 each; (8) overruling timely objections, if any; and (9) entering final judgment dismissing the Action with prejudice and reserving jurisdiction over Settlement implementation. A proposed Final Approval Order is attached for the Court's convenience as ***Exhibit D***.

Date: April 4, 2025.                    Respectfully Submitted,

                                 */s/ Jeff Ostrow*
                                 Jeff Ostrow (*pro hac vice*)
                                 **KOPELOWITZ OSTROW P.A.**
                                 1 West Las Olas Blvd., Ste. 500
                                 Fort Lauderdale, FL 33301

Tel: 954.332.4200
ostrow@kolawyers.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
Tel: 866.252.0878
gklinger@milberg.com

Jason S. Rathod (*pro hac vice*)
**MIGLIACCIO & RATHOD LLP**
412 H St., NE
Washington. D.C. 20002
Tel: 202.470.3520
jrathod@classlawdc.com

***Class Counsel for the Settlement Class***

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on April 4, 2025, I caused the foregoing to be electronically filed with the Clerk of the Court, using the CM/ECF system, which will send a notice of electronic filing to all counsel of record.

<u>/s/ Jeff Ostrow</u>
Jeff Ostrow